**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ADVENTIST HEALTH SYSTEM/WEST, and on behalf of the STATES of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, IOWA, LOUISIANA, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VERMONT, WASHINGTON, the COMMONWEALTHS of MASSACHUSETTS, PUERTO RICO, and VIRGINIA, and the DISTRICT OF COLUMBIA,<br><br>Plaintiffs/Relator,<br><br>vs.<br><br>ABBVIE INC.; ALLERGAN SALES, LLC; ALLERGAN USA, INC.; ASTRAZENECA LP; ASTRAZENECA PHARMACEUTICALS LP; NOVARTIS PHARMACEUTICALS CORPORATION; NOVARTIS AG; SANDOZ, INC.; SANOFI-AVENTIS U.S. LLC; SANOFI US SERVICES INC.; SANOFI S.A.; AND GENZYME CORPORATION,<br><br>Defendants. | Case No. 2:21-CV-04249-DSF-SKx<br><br>**STIPULATED PROTOCOL RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**1. PURPOSE**

This Stipulated Protocol will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Order on Discovery Disputes, and any other applicable orders and rules. Nothing in this Stipulated Protocol is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge. Nothing in this Stipulated Protocol shall be interpreted to require production of information protected by the attorney-client privilege, work-product doctrine, and/or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

**2. COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI (attached as Exhibit A) during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

**3. ESI PERSON(S) MOST KNOWLEDGEABLE**

The parties have identified ESI Person(s) Most Knowledgeable ("ESI PMK") to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI PMK will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the ESI PMK, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4. PRESERVATION**

The parties agree to meet and confer regarding their preservation obligations.

**5. SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6. PRODUCTION FORMATS**

The parties agree to produce documents as described in Appendix 1 of this Stipulated Protocol. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to intentionally degrade the searchability of documents as part of the document production process.

**7. MISCELLANEOUS**

a) The parties agree to globally de-duplicate (i.e., across custodians or sources) identical copies of electronic documents or emails with attachments (i.e., the documents are exact duplicates based on MD5 hash values) at the document family or parent level. If the document was de-duplicated, the producing party must identify each custodian or source where the document was located in the "All Custodians" metadata field. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI. To the extent that de-duplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

b) The parties may utilize email threading to minimize review and production of information contained within a lesser inclusive email, provided that the parties use industry standard software (e.g., Relativity analytics or Brainspace) and processes to

identify inclusive emails. Email threads are email communications that contain lesser-included email communications that also may exist separately in the party's ESI document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. To the extent that a lesser inclusive email includes unique attachment(s) not attached to the most inclusive email, the lesser inclusive email and unique attachment(s) must be produced. To the extent that an e-mail thread contains privileged communications, such communications can be redacted. When a thread includes a privileged e-mail, the Producing Party need only include one entry on the privilege log for the entire email thread and need not log each email contained in the thread separately. The parties reserve the right to request additional information regarding the email threading process.

c) Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST Hash Set List. System and program files defined on the NIST list need not be processed, reviewed, logged, or produced. The parties may suppress container files (.ZIP, .PST, .RAR) that do not reflect substantive information prior to production, but must produce the remainder of those responsive, non-privileged document families found within the container file, including any emails to which that container file is attached. Compressed file types (i.e., .ZIP, .RAR, .CAB, .7Z) should be decompressed so that the lowest level document or file is extracted. Similarly, the parties may suppress any non-substantive images extracted from email documents (e.g., logos, icons) prior to production.

d) The Parties agree that absent a showing of good cause by the requesting Party, there is no obligation to preserve, collect, review, or produce sources of ESI that are

not reasonably accessible or as to which preservation, collection, review, or production is not warranted by the circumstances of this case because such sources are not likely to contain additional relevant information beyond the information in more readily accessible sources, such that the burdens and costs of preservation, collection, review, or production outweigh any benefit. Such sources include, but are not limited to: (i) deleted, ‘slack,’ fragmented, or unallocated data only accessible by forensics; (ii) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (iii) structural files not material to individual file contents (e.g., .CSS, .XSL, .XML, .DTD, etc.); (iv) documents deleted in the normal course of business before the time a preservation obligation in this Action came into effect; (v) data stored on photocopiers, scanners, and fax machines; (vi) data stored in metadata fields that are frequently updated automatically (e.g., ‘last opened’ date); and (vii) other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

e) Unless agreed otherwise herein, the Parties will not review or produce embedded files (e.g., .vcf files embedded in emails or .xlsx files embedded in PowerPoint presentations or excels) unless the embeddings are user-generated (e.g. PDF with embedded Word and Excel documents, Word document with another Word file document, .xlsx files embedded in PowerPoint presentations, etc.). User-generated embedded files shall be produced as family groups. User-generated embedded files shall be assigned Bates Numbers that directly follow the Bates Numbers on the documents within which they are embedded.

f) Recognizing that each Producing Party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be

varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents. No Party shall unreasonably object to any such variance.

**8. DOCUMENTS PROTECTED FROM DISCOVERY**

a) Pursuant to Fed. R. Evid. 502(d) and 502(e), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

b) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications, documents, and materials may be identified on a privilege log by category, rather than individually, if appropriate.

c) The parties agree to confer regarding the format and content of the privilege log and the scope of logging requirements.

d) The parties need not log any documents that are produced in partially redacted form, using a text box redaction indicating the reason for the redaction (i.e., Redacted for Privilege), so long as the basis for the redaction(s) is apparent from the unredacted portions of the document(s). If the receiving party cannot reasonably determine the basis for the redaction on the face of the document, the receiving party may request the producing party to provide such information.

**9. PROTECTIVE ORDER**

All productions will be subject to the Stipulated Protective Order ("Protective Order") to be entered by the Court in this Action. For the avoidance of doubt, nothing herein shall

contradict the parties' rights and obligations with respect to any information designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order.

**10. MODIFICATION**

This Stipulated Protocol may be modified by written agreement of the parties. The parties agree to meet and confer in good faith and to attempt to resolve all discovery disputes before burdening the Court. Any dispute(s) left unresolved after good faith meet and confer efforts may be submitted to the Court for resolution in accordance with Local Rule 37

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: August 28, 2026

*<u>/s/ Kenneth D. Capesius</u>*

Kenneth D. Capesius (SBN 347555)*
kcapesius@baronbudd.com
W. Scott Simmer (admitted *pro hac vice*)
ssimmer@baronbudd.com
Noah M. Rich (admitted *pro hac vice*)
nrich@baronbudd.com
**BARON & BUDD, P.C.**
2600 Virginia Ave. NW
Suite 900
Washington, DC 20037
Telephone: 202.333.4562

Daniel R. Miller (admitted *pro hac vice*)
dmiller@wmhlaw.com
**WALDEN HARAN WILLIAMS LLP**
800 N. King Street, Suite 303
Wilmington, DE 19801
Telephone: 302.540.1568

Jonathan Z. DeSantis (admitted *pro hac vice*)
jdesantis@wmhlaw.com
**WALDEN HARAN WILLIAMS LLP**
2000 Market Street, Suite 1430
Philadelphia PA 19103
Telephone: 215.825.5283

William H. von Oehsen (admitted *pro hac vice*)
William.vonOehsen@PowersLaw.com

Ronald S. Connelly (admitted *pro hac vice*)
Ron.Connelly@PowersLaw.com
**POWERS PYLES SUTTER & VERVILLE PC**
1501 M Street NW, 7th Floor
Washington, DC 20005
Telephone: 202.872.6765
Facsimile: 202.785.1756

*admitted only in California

*Attorneys for Plaintiff-Relator*

DATED: August 28, 2026

*<u>/s/ Amy Jane Longo</u>*
Amy Jane Longo (Bar No. 198304)
ROPES & GRAY LLP
10250 Constellation Boulevard
Los Angeles, CA 90067
amy.longo@ropesgray.com
Telephone: (310) 975-3269
Facsimile: (310) 975-3366

Laura G. Hoey (admitted *pro hac vice*)
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
laura.hoey@ropesgray.com
Telephone: (312) 845-1200
Facsimile: (312) 845-5500

John P. Bueker (admitted *pro hac vice*)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston St.
Boston, MA 02199
john.bueker@ropesgray.com
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorneys for Defendants Genzyme Corporation, Sanofi US Services Inc., and Sanofi-Aventis U.S. LLC*

*/s/ Kelly Perigoe*
Kelly Perigoe (SBN 268872)
KING & SPALDING LLP
633 West Fifth Street, Suite 1600

Los Angeles, CA 90071
kperigoe@kslaw.com
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Jeffrey S. Bucholtz (admitted *pro hac vice*)
Ashley C. Parrish (admitted *pro hac vice*)
John D. Shakow (admitted *pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW, Suite 900
Washington, DC 20006
jbucholtz@kslaw.com
aparrish@kslaw.com
jshakow@kslaw.com
Telephone: (202) 737-0500
Facsimile: (202) 626-3737

Martha Banner Banks (admitted *pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
bbanks@kslaw.com
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

*Attorneys for Defendants AbbVie Inc., Allergan Sales, LLC, and Allergan USA, Inc.*

*<u>/s/ Paula R. Ramer</u>*

Oscar Ramallo (SBN 241487)
oscar.ramallo@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4290
Facsimile: (213) 243-4199

Paula R. Ramer (admitted *pro hac vice*)
Jennifer J. Oh (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
paula.ramer@arnoldporter.com
jennifer.oh@arnoldporter.com
Telephone: (212) 836-8000

Facsimile: (212) 836-8689

Jeffrey L. Handwerker (admitted *pro hac vice*)
Elliot S. Rosenwald (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
elliot.rosenwald@arnoldporter.com
jeffrey.handwerker@arnoldporter.com
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP*

*/s/ Carolyn A. Delone*
Stephanie Yonekura (SBN 187131)
HOGAN LOVELLS CADWALADER US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
stephanie.yonekura@hoganlovells.com
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

Jonathan L. Diesenhaus (admitted *pro hac vice*)
Carolyn A. DeLone (admitted *pro hac vice*)
Rachel M. Stuckey (admitted *pro hac vice*)
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
jonathan.diesenhaus@hoganlovells.com
carrie.delone@hoganlovells.com
rachel.stuckey@hoganlovells.com
Telephone: (202) 637-5600
Facsimile: (202) 637-5910

*Attorneys for Defendants Novartis Pharmaceuticals Corporation and Sandoz Inc.*

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: August 29, 2026

STEVE KIM
United States Magistrate Judge

**Appendix 1**

*1. General Format Information.* The parties agree to produce documents in single-page, black-and-white, Group IV TIFF image file format with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters, linking the images to the corresponding document that indicate the beginning and ending of each document, showing the Bates number of each page and the appropriate unitization of the documents. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. Productions will be delivered via secure electronic file transfer system or on encrypted physical media, such as CDs, DVDs or hard drives.

*2. Metadata.*

a. The metadata fields set out in Appendix 2 will be produced in the .DAT data load file to the extent already in existence and reasonably accessible or available. The first line in each Concordance compatible .DAT file shall be the header containing the agreed-upon metadata field names, and each subsequent line shall contain the fielded data for each document.

b. ESI shall be processed in a manner that preserves the source native file and all metadata without modification, including their existing time, date, and time-zone metadata consistent with the requirements set forth in this Order. The parties will make best efforts to preserve metadata; the parties will meet and confer upon request for additional metadata.

c. Auto date/time stamps: ESI shall be processed to preserve and display the date/time shown in the Document as it was last saved or modified by the custodian or end user, not the date of collection or processing.

*3. Images.* Each image file of an electronic document will be created directly from the original electronic document. Image files shall show all text and images that would be visible in the original electronic format (Native Format), including redlines and speaker notes. Each image should be named with its corresponding Bates number. TIFF files must be produced

in Group IV format with minimum resolution of 300 dpi. Bates numbers, confidentiality designations, and redactions shall be burned into the TIFF image files.

*4.* *Load Files*. Image and document break information in .OPT image load files must correspond to the beginning Bates number in the .DAT metadata load file. Each TIFF file produced must be referenced in the production's corresponding .OPT image load file.

*5.* *Color*. Documents that the parties can reasonably identify as containing color shall be produced in color, as 300 dpi single-page JPG images with JPG compression as to not degrade the original image, to the extent feasible. The parties shall take reasonable steps to maintain the legibility and fidelity of all color elements during processing and production. If a producing party determines that production in color is not feasible or is overly burdensome, the parties will meet and confer in good faith to the extent a receiving party requests the reproduction of documents in color.

*6.* *Natives*. Spreadsheets (.xls, .xlsx, .xlsb, .xlsm, csv, etc.), audio/visual files, and other documents that are unable to be converted to .tiff format in a reasonably useable manner shall be produced in native format ("Native Files"). Each Native File shall be produced with a corresponding slip-sheet TIFF placeholder image file, which will contain burned in Bates numbers, confidentiality designations and language indicating that the document is being produced as a Native File. Native Files shall be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each spreadsheet shall be included in the .DAT load file indicating the relative file path to each native file in the production volume. Native Files shall be produced with extracted text and applicable metadata fields as set forth in Appendix 2. For Native Files that contain redactions, the parties may either apply the redactions to the native file or produce TIFF image files with burned-in redactions in lieu of a Native File and TIFF placeholder image. The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request. Other than as specifically set forth in this paragraph, a producing party need not produce documents in native format.

*7.* *Text*. For each produced document, a document-level, searchable text (.TXT) file extracted from the native, electronic file shall be provided. Such text files shall contain the full text extraction. To the extent technically feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns, and rows. Each extracted text file shall be named according to the beginning Bates number that is assigned to that specific record in the production, followed by .txt. If a document has been redacted or does not contain extracted text, Optical Character Recognition ("OCR") can be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.

*8.* *Language*. All documents shall be produced in their original language. For documents in non-English languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

*9.* *Electronic Production of Hard Copy Documents*. To the extent they exist and must be produced, the parties agree to the following:

a. The parties agree that documents existing in hard copy form should be produced in single-page, black-and-white, Group IV, 300-dpi TIFF format and accompanied by an Opticon (*.opt) image load file. Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain (a) ProdBeg, (b) ProdEnd, (c) BegAttach, (d) EndAttach, and (e) custodian name. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

b. Documents that the parties can reasonably identify as containing color shall be produced in color, as 300 dpi single-page JPG images with JPG compression as to not degrade the original image, to the extent feasible. The parties shall take reasonable steps to maintain the legibility and fidelity of all color elements during processing and production. If a producing party determines that production in color is not feasible or is overly burdensome, the parties

will meet and confer in good faith to the extent a receiving party requests the reproduction of documents in color.

c. Hard copy documents in color will be scanned in color to ensure full information is communicated in the scanned copy.

d. In scanning hard copy documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents should be logically unitized). The parties will undertake best efforts to unitize documents correctly.

e. Text of hard copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

f. The parties agree that this agreement governs only the format of electronic production of documents and does not preclude a request for the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

*10.* *Hidden Content.* Documents with hidden content, such as spreadsheets or presentations, shall be processed with all content unhidden and any notes displayed on the TIFF image.

*11.* *Bates Numbering*. Bates numbering must maintain consistent padding (e.g., with a consistent number of leading zeros) across the entire production and be sequential within a given document. The numbering convention shall be consistent throughout rolling productions. There shall be no spaces between the prefix and numeric value. No special characters shall be used other than underscores and dashes. If suffixes are used, they shall be in dot notation (e.g., BATES000000001.001). Bates numbers shall be branded in the lower right-hand corner of all TIFF images and shall not obscure any part of the underlying image.

*12.* *Attachments*. Parent-child relationships (the association between e-mails and attachments) will be preserved. Document families must be produced consecutively and together with the family relationship noted in the appropriate metadata field(s). Privileged cover emails

or attachments may be removed and replaced in the production set with a Bates-numbered slip sheet. Non-privileged cover emails to responsive Documents will be deemed responsive and produced.

*13.* *Confidentiality*. Confidentiality designations, where appropriate, shall be branded in the lower left-hand corner of TIFF images and shall not obscure any part of the underlying image.

*14.* *Time Zone*. Each party shall normalize ESI produced in this case to a single time zone, *i.e.*, UTC.

*15.* *Passwords*. The parties shall make reasonable efforts to remove passwords or other security protection from potentially responsive ESI documents.

*16.* *Databases*. To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may comply with the discovery request by querying the database and generating a report ("Structured Data Report") in a reasonably usable and exportable electronic format (for example, in Excel or .CSV format). To the extent available and reasonably accessible, the first line in the Structured Data Report will show the column headers for each field of data included in the Structured Data Report.

*17.* *Hyperlinked Files*. A party is not required to produce hyperlinked files as part of the same Document Family as the Document containing the hyperlink; provided however, that upon reasonable request for such files that the Requesting Party cannot reasonably locate in a production after good faith efforts, a party will undertake a reasonable effort to search for such files and, if it is able to identify them upon such effort, produce such files.

*18.* *Versions*. The Producing Party is not required to produce prior versions of SharePoint and Microsoft Teams sites unless there is a reasonable basis to believe that a prior version contains relevant and responsive material that is non-duplicative of the current version. The Producing Party shall otherwise produce prior versions of relevant and responsive data that is non-duplicative of the current version.

*19.* *Text Messages or Chats*. To the extent a dispute arises in response to discovery requests regarding the production of messages from message-based applications other than e-

mail, which include applications such as Gchat, Microsoft Teams, texting on cell phones, WhatsApp, Facebook Messenger, Slack, or other similar messaging or texting applications, the Parties agree to meet and confer in good faith regarding the responsiveness, production format, scope of the production (including context), or other issues that may arise.

**Appendix 2**

**Metadata Fields for Production**

Metadata Field names may vary depending on the application which generates them. Accordingly, the chart below describes the Metadata Fields to be produced in generic, commonly used terms which may be adapted to the specific types of ESI it is producing. Any ambiguity about a Metadata Field may be discussed prior to processing the subject ESI for production.

| Metadata Field | Description |
|---|---|
| Bates Begin | The bates begin field contains the unique sequential Bates number of the first page of the document. |
| Bates End | The bates end field contains the unique sequential bates number of the last page of the document. |
| Beg Attach | Used for records with parent/child relationship (e.g., an e-mail with a file attachment). Beg Attach is the Bates Begin for the parent record. This field is populated for each child record as well as the parent record. |
| End Attach | Used for records with a parent/child relationship (e.g., an e-mail with a file attachment). End Attach is the Bates End of the last child record in the parent/child group. This field is populated for each child record as well as the parent record. |
| Production Volume | Production volume name |
| Document Category | The record type of a document (i.e., Email, Edoc, Attach) |
| Custodian | The original custodian who possessed the document or electronic file and whose file has been processed |
| All Custodians | When global de-duplication is used, these are custodians who possessed the document or electronic file and whose file has been de-duplicated; multiple custodians separated by semicolons |
| Sort Date Time | The date taken from the Email Sent Date, Email Received Date, or Last Modified Date (in order of precedence), repeated for a parent document and all children items to allow for date sorting (produced in "MM/DD/YYYY HH:MM" format). |
| Email BCC | Recipient(s) of "blind carbon copies" of the e-mail message. |
| Email CC | Recipient(s) of "carbon copies" of the e-mail message. |
| Email Date/Time Received | The date and time at which an email message was received (produced in "MM/DD/YYYY HH:MM" format). |
| Email Date/Time Sent | The date and time the e-mail message was sent (produced in "MM/DD/YYYY HH:MM" format). |
| Email From | Sender of the e-mail message. |
| Email Message ID | Internet message ID assigned to an e-mail message by the outgoing mail server, if available |
| Email Subject | Subject of the e-mail message |
| Email Importance | Indicates priority of email |
| Email To | Primary recipient(s) of the e-mail message |

| Metadata Field | Description |
|---|---|
| Sender | Sender field extracted from the metadata of a chat message |
| Members | Individuals who are members of a chat thread at the time of export |
| Collaborators | Individuals who have access to the document at the time of export |
| Attachment Count | The number of files attached to a parent email. |
| Attachment List | The attachment file names of all child items in a family group, delineated by semicolon. This is present only on parent items. |
| Hash | MD5 hash value of the document |
| Text Link | Path to the corresponding OCR or extracted text file included with a production volume. |
| Filename | Name of original native file. |
| Title | Any value populated in the Title field of the document properties. |
| Subject | Any value populated in the Subject field of the document properties. |
| Author | Author field extracted from the metadata of the native file. |
| Last Modified By | Any value populated in the last modified by field of the document properties |
| File Accessed | Last Date/Time file was opened for reading and writing (produced in “MM/DD/YYYY HH:MM” format) according to the File System. |
| File Modified | Last Date/Time contents of file were changed (produced in “MM/DD/YYYY HH:MM” format) according to the File System. |
| Date/Time Created | The date and time the native file was created (produced in “MM/DD/YYYY HH:MM” format). |
| Date/Time Last Modified | The date and time on which the native file was last modified (produced in “MM/DD/YYYY HH:MM” format). |
| Time Zone | Time zone of data as normalized by the parties to UTC |
| File Type | E-mail, Attachment, Electronic File, Hard Copy |
| File Extension | File extension of document (.msg, .doc, .xls, etc.). |
| Folder | E-mailbox folder structure; otherwise, original file path to file. This should include location, file name, and file extension. |
| Native Link | Relative file path to each native file in the production volume. |